Filed 1/12/26  In re N.D. CA2/3

# NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

# IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

## SECOND APPELLATE DISTRICT

## DIVISION THREE

| | |
|---|---|
| In re N.D. et al., Persons Coming Under the Juvenile Court Law. | B341706<br><br>(Los Angeles County Super. Ct. No. 19CCJP05687C–D) |
| LOS ANGELES COUNTY DEPARTMENT OF CHILDREN AND FAMILY SERVICES,<br><br>       Plaintiff and Respondent,<br><br>       v.<br><br>G.D.,<br><br>       Defendant and Appellant. | |

APPEAL from orders of the Superior Court of Los Angeles County, Linda Sun, Judge.  Remanded with instructions and dismissed.

Sean Angele Burleigh, under appointment by the Court of Appeal, for Defendant and Appellant.

Dawyn R. Harrison, County Counsel, Kim Nemoy, Assistant County Counsel, Bryan Mercke, Deputy County Counsel, for Plaintiff and Respondent.

_____

Appellant G.D. (father) appeals from juvenile court jurisdictional findings and dispositional orders sustaining a petition filed under Welfare and Institutions Code section 300 and asserting dependency jurisdiction over minor children N.D. and M.D.[1]  Pursuant to the parties' stipulation, we remand with instructions to correct two clerical errors.  We otherwise dismiss the appeal.

## FACTUAL AND PROCEDURAL BACKGROUND

Father and mother S.R. (mother) have two children together, N.D. and M.D.  Mother previously had another child, A.S., with nonparty J.S.

On April 26, 2024, the Department of Children and Family Services (DCFS) received a referral alleging that father had pinched A.S. on the hand, causing a purple bruise.[2]  A.S. also reported that father recently "put his foot on her face" and gave her a bloody nose, and that he "always hits her" in the face, side,

_____

[1]   All further undesignated statutory references are to the Welfare and Institutions Code.

[2]   Mother reported that J.S. was not involved in A.S.'s life at this time and had not visited the child for about two months.

2

and thigh.  She further reported that mother hit her legs with a hanger.  The report was closed as inconclusive.

DCFS received another report as to A.S. on May 9, 2024.  A.S. reported that father had pinched her hand and the social worker observed a small bruise.  The child denied that father or mother ever sexually abused her.  She also denied being hit with objects or witnessing her siblings being physically disciplined.

When interviewed about the referral, father denied pinching A.S., but he speculated that he may have accidentally scratched her while holding her hand.

During a May 9, 2024 home visit, a DCFS social worker reported that A.S. appeared comfortable in the home and well bonded with father.  The social worker observed no bruising or marks on N.D. and M.D.  Both children were too young to provide a statement.

During a physical examination on or about May 13, 2024, A.S. reported that mother hit her with hangers when she got " 'bad colors' " at school, and she had a bruise that could have been caused by a hanger.  A.S. also stated that father had punished her in the past by covering her mouth and biting her ear.

On May 22, 2024, mother admitted to hitting a table with a hanger to scare A.S., but she denied hitting the child.  Father and mother both denied that father had put his foot on A.S.'s face, gave her a bloody nose, or physically disciplined her in any other way.  Mother disclosed that father and A.S. sometimes " 'play fight' " and that this occasionally made A.S. upset.

On May 24, 2024, DCFS received a report that A.S. arrived at school with two "big scratches" on her arm, which she said mother caused.  A DCFS social worker went to the school and

3

observed two purple scratches on A.S.'s arm measuring about one and a half inches each. A.S. said that mother told her not to report that anyone hit her at home, otherwise the police would take her away. A.S. also reported that father hit her when she misbehaves, and that father once hit her on the mouth and gave her a bloody lip. She denied that father or mother physically abused or disciplined M.D. or N.D. Later that day, mother disclosed that she accidentally scratched A.S. with a broken hanger while trying to spank her.

While the social worker was interviewing A.S. about the scratches, without provocation, A.S. stated that father touched her private parts at night while mother was sleeping, and that he also touched A.S. while she was in the shower. A.S. told father to stop and he stopped. The child said this had happened " '100 times,' " and mother knew about it but did nothing. She reported that father sometimes touched her over her clothes, and other times he put his hand " 'inside,' " and "she lifted her pants to show that it was under the clothes." According to A.S., father told the child not to tell mother about the touching. A.S. also reported that she had seen father's penis in his " 'pocket,' " and she drew a penis for the social worker.

Father denied the allegations of sexual abuse and improper touching. Mother denied any knowledge of anyone sexually abusing A.S., and denied that the child had told her about any such abuse. Mother explained that A.S. might have seen a picture of a penis on an iPad. About a month later, mother said that A.S. might have drawn a penis after seeing N.D.'s diaper being changed or seeing "something on Twitter."

On May 24, 2024, pursuant to an agreed safety plan, N.D. and M.D. moved in with paternal grandmother and A.S. began

4

staying with maternal aunt.  On May 30, 2024, the social worker coordinated for A.S. to move in with J.S. after confirming that his home was safe.

On June 3, 2024, DCFS filed a section 300 petition alleging that N.D., M.D., and A.S. were endangered because father sexually and physically abused A.S. and because mother physically abused A.S.

At the June 17, 2024 initial hearing, the juvenile court temporarily detained A.S. from mother and temporarily detained N.D. and M.D. from father pending disposition of the petition.

On July 29, 2024, J.S. told a DCFS social worker that A.S. peed her pants while playing hide and seek.  While discussing the incident, A.S. spontaneously told J.S. that she sometimes pooped her pants because she did not want to be touched by father.

At a July 31, 2024 forensic interview, A.S. reported that father " 'hit [her] all the time.' "  She described one incident where father accidentally hit her nose with his toes while she was asleep, but she could not provide the details of any other hitting or physical abuse.  She did not disclose any inappropriate touching or sexual abuse.

At the October 10, 2024 adjudication and disposition hearing, the juvenile court stated that it would sustain amended allegations that father inappropriately touched A.S. (the b-1 count), and it struck allegations that mother failed to protect A.S. from this touching.  The court did not identify which children were at risk of harm because of father's conduct.  During the dispositional phase of the hearing, father's counsel asserted that the court "did not sustain as to [N.D.] and [M.D.] the potential for sexual abuse because they are clearly differently situated or inappropriate touching."  Later, the court stated that it had

"sustained the inappropriate discipline count against the father, but did not sustain the inappropriate touching against the father. And [N.D. and M.D.] are not similarly situated," and it "adopt[ed] all of [father's] argument with that."  In the interlineated petition filed later that day, the amended inappropriate touching count alleged that father inappropriately touched A.S. and that this endangered A.S., without reference to N.D. and M.D.  The minute orders as to N.D. and M.D. both state that the inappropriate touching count was sustained as to those children.

The court also sustained amended allegations that father inappropriately disciplined A.S. and that this conduct endangered all three children (the b-3 and j-3 counts).  The original allegations described father's conduct as physical abuse.  At the hearing, father's counsel argued that at most, the two counts should be sustained to "conform to proof to include inappropriate physical discipline."  The juvenile court sustained the two counts "according to proof as suggested by" father's counsel, and it described the j-3 count as involving "inappropriate discipline."  The interlineated petition described father's conduct as physical abuse once in the b-3 count and once in the j-3 count.

Finally, the court sustained allegations that mother's inappropriate discipline of A.S. endangered all three children.

The juvenile court declared N.D. and M.D. dependents of the court.  It found that releasing N.D. and M.D. to father and mother would not be detrimental to their safety, and therefore ordered the two children released to father and mother.  The court ordered father to "participate in sexual abuse counseling, anger management, parenting, family preservation, individual counseling."

Father timely appealed as to N.D. and M.D.

6

## DISCUSSION

On November 18, 2025, after this appeal was fully briefed, the parties filed a "joint application and partial stipulation" asking this court to remand the matter to correct two clerical errors in the juvenile court orders and the interlineated petition. We accept the stipulation. (*People v. Mitchell* (2001) 26 Cal.4th 181, 185 [reviewing court may correct clerical error in order that does not accurately reflect oral ruling].)[3]

## I.     We accept the parties' stipulation to remand for correction of two clerical errors

First, the parties stipulate that the b-1 count should be stricken from the orders as to N.D. and M.D. At the adjudication and disposition hearing, father's counsel argued that the court "did not sustain as to [N.D.] and [M.D.] the potential for sexual abuse because they are clearly differently situated or inappropriate touching." The juvenile court confirmed that, with respect to the b-1 count, N.D. and M.D. "are not similarly situated," and the interlineated petition omitted those two children from that count. However, the October 10, 2024 minute orders entered as to N.D. and M.D. following the hearing both state that count b-1 was "sustained as amended" as to those

---

[3]     The parties assert that the stipulation comports with Code of Civil Procedure section 128, subdivision (a)(8), which specifies the circumstances under which an appellate court may reverse or vacate a judgment. However, the parties have not asked us to reverse or vacate a judgment—they request that we remand with instructions to correct clerical errors, which will not result in reversal of any judgment or order. Code of Civil Procedure section 128 therefore does not govern our analysis.

7

children.  The parties stipulate that the court intended to strike N.D. and M.D. from the b-1 count, and that this was a clerical error that may be corrected by this court.  We therefore remand the matter, and direct the juvenile court to strike all references to the b-1 count from the October 10, 2024 minute orders as to N.D. and M.D.[4]

Second, the parties stipulate that the October 10, 2024 interlineated petition should be amended to conform with the juvenile court's oral ruling on the b-3 and j-3 counts.  At the adjudication and disposition hearing, father's counsel contended that these counts should be sustained as inappropriate discipline counts, and the court sustained those counts according to proof "as suggested by" father's attorney.  In the interlineated petition, each count includes one reference to father committing "physical abuse."  The parties stipulate that the reference to "physical abuse" in the third sentence of each count is a clerical error that may be corrected by this court.  Thus, on remand, we also direct the juvenile court to strike the term "physical abuse" in the third sentence of the b-3 and j-3 counts in the interlineated petition, and replace it with the term "inappropriate discipline."

II.     **Father's appeal is nonjusticiable, and we decline to exercise discretion to address his remaining arguments**

"It is a fundamental principle of appellate practice that an appeal will not be entertained unless it presents a justiciable

---

[4]     Father did not appeal from any findings or orders relating to A.S.  As father concedes, this court lacks jurisdiction over those findings and orders, meaning we have no power to address the b-1 findings as to A.S.

issue." (*In re I.A.* (2011) 201 Cal.App.4th 1484, 1489 (*I.A.*).) "An important requirement for justiciability is the availability of 'effective' relief—that is, the prospect of a remedy that can have a practical, tangible impact on the parties' conduct or legal status." (*Id.* at p. 1490.) Relatedly, " '[w]hen a dependency petition alleges multiple grounds for its assertion that a minor comes within the dependency court's jurisdiction, a reviewing court can affirm the juvenile court's finding of jurisdiction over the minor if any one of the statutory bases for jurisdiction that are enumerated in the petition is supported by substantial evidence. In such a case, the reviewing court need not consider whether any or all of the other alleged statutory grounds for jurisdiction are supported by the evidence.' " (*In re I.J.* (2013) 56 Cal.4th 766, 773.)

Father concedes that the juvenile court properly asserted dependency jurisdiction over N.D. and M.D. Specifically, in addition to its findings as to father, the juvenile court sustained allegations that mother inappropriately disciplined A.S. and that this conduct endangered N.D. and M.D. Thus, even if we agreed with father's arguments, we would not conclude the juvenile court lacked jurisdiction over N.D. and M.D., nor would we take any other action that could affect father. (*In re D.P.* (2023) 14 Cal.5th 266, 283–284 (*D.P.*); *I.A.*, *supra*, 201 Cal.App.4th at pp. 1491–1492.)

Father nonetheless contends his appeal is justiciable because reversal of the "inconsistent and confusing" jurisdictional findings could support reversal of the dispositional order, pursuant to which father was required to complete sexual abuse counseling for predators. (*D.P.*, *supra*, 14 Cal.5th at p. 283 ["where a jurisdictional finding 'serves as the basis for

9

dispositional orders that are also challenged on appeal' [citation], the appeal is not moot"].) But father fails to explain why reversal of any jurisdictional findings would necessarily affect the dispositional order. The juvenile court has "broad discretion . . . to formulate disposition orders to address parental deficiencies when necessary to protect and promote the child's welfare," even when those deficiencies were not the basis for dependency jurisdiction. (*In re K.T.* (2020) 49 Cal.App.5th 20, 25.) Thus, even if we reversed all jurisdictional findings as to father, the juvenile court still would have discretion to enter a dispositional order requiring father to participate in services based on the evidence in the record. Father does not argue that the court would have abused its discretion in doing so.

Father also asserts that his appeal is justiciable because the court sustained allegations that could be reportable in the Child Abuse Centralized Index (CACI). "Inclusion in the CACI carries several consequences for parents." (*D.P.*, *supra*, 14 Cal.5th at p. 279.) However, when DCFS reports allegations, "it must provide written notice to the person whose conduct was reported to the CACI." (*Id.* at p. 280, citing Pen. Code, § 11169, subd. (c).) Father does not claim that he received such notice, nor does he provide any other evidence that DCFS reported his conduct for inclusion in the CACI. Father contends that DCFS "may" report the findings in the future. But this speculative argument is insufficient to overcome the conclusion that the appeal is nonjusticiable. (*D.P.*, at p. 280; but see *In re S.R.* (2025) 18 Cal.5th 1042, 1048 [appeal survived mootness challenge where parent demonstrated agency must report conduct for inclusion in the CACI].)

10

In addition, father asks us to exercise discretion to consider his remaining challenges to the juvenile court's jurisdictional findings. (*D.P.*, *supra*, 14 Cal.5th at pp. 286, 285 [reviewing court may exercise discretion when the challenged finding "is based on particularly pernicious or stigmatizing conduct"].) Aside from the allegations addressed in the parties' stipulation, father challenges the findings that he pinched A.S., bit her ear, struck her face and caused a cut lip, and put his hands over her mouth, and that this conduct endangered N.D. and M.D. These findings are not particularly pernicious or stigmatizing. (*Ibid*.) Father also contends that the challenged findings could impact future dependency proceedings. But father fails to identify any specific proceeding at which the findings might be relevant. (*Id*. at p. 278 [speculative harm insufficient].) Dependency matters focus on "the then prevailing circumstances of parent and child." (*I.A.*, *supra*, 201 Cal.App.4th at p. 1495.) In a hypothetical future dependency proceeding, the juvenile court would be obligated to independently assess the then-existing circumstances to evaluate the risk of harm to the minor child or children. In short, having considered the factors identified in *D.P.*, we decline to exercise our discretion to reach the merits of father's remaining arguments. (*Ibid*.)

## DISPOSITION

We remand and instruct the juvenile court to correct the October 10, 2024 minute orders asserting dependency jurisdiction over N.D. and M.D., by striking all references to count b-1.  We further instruct the juvenile court to correct the October 10, 2024 interlineated petition by striking the term "physical abuse" in the third sentence of the amended b-3 and j-3 counts, and replacing that language with the term "inappropriate discipline."  The appeal is otherwise dismissed as nonjusticiable.

**NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS**

HANASONO, J.

We concur:

EGERTON, Acting P. J.

ADAMS, J.

12